DUFRESNE, Judge.
This is a workman’s compensation case. Norman Steele, plaintiff, was employed by Winn-Dixie of Louisiana, Inc., defendant, on June 14, 1986, the day he injured his back in the course and scope of his employment. Winn-Dixie paid temporary total disability benefits at the rate of $254.00 per week, and all medical expenses, until March 21, 1988. On that date, it reduced the temporary total disability payments to Supplemental Earnings Benefits of $114.22, per week. It also refused to pay for surgical procedure which was recommended by plaintiff’s treating physician in the summer of 1988, and originally scheduled for September 7, of that year. As of the date of trial, that surgery had not been performed.
Plaintiff sued Winn-Dixie, alleging that it had acted arbitrarily and capriciously in reducing his benefits, and refusing to pay *61 for the recommended surgery. After trial on August 24, 1989, the trial judge ruled that plaintiff was entitled to his original benefits of $254.00 per week, as well as the costs of the recommended surgery, but further ruled that the restoration of the original amount of benefits was to be effective only from the date of trial. He also found that Winn-Dixie had not been arbitrary and capricious in its actions and therefore imposed no penalties or attorney fees.
Winn-Dixie has now appealed, alleging that the findings by the trial judge that plaintiff is entitled to restoration of the initial amount of benefits of $254.00 per week and medical expenses, is manifestly erroneous. Plaintiff has answered the appeal, alleging that the increase in benefits should have been retroactive to March 21, 1988, the date upon which Winn-Dixie reduced them to $114.22 per week. He also urges that the trial judge erred in failing to award penalties and attorney fees. Because we find merit in plaintiffs argument that the increase in benefits should have been made retroactive to March 21, 1988, we amend the judgment to so provide. In all other respects, the judgment is affirmed.
The major factual disputes in this case are whether at the time of trial plaintiff was still suffering from a condition which rendered him temporarily totally disabled, and whether surgery was necessary to alleviate this condition. The facts of the injury, which are not disputed, are that plaintiff injured his back while unloading a one-hundred pound box of meat from defendant’s truck on June 14, 1986. He was treated conservatively by several doctors for some six weeks for pain in the left low back and left groin. On August 5, he was referred to Dr. Carl Culicchia, a neurological surgeon, who hospitalized him for a CT scan and myelogram. After reviewing these tests results and conferring with Dr. Mark Juneau, an associated orthopedic surgeon, Dr. Culicchia concluded that there was no identifiable neurological problem in plaintiffs back, but rather that his symptoms were mechanical in origin.
Both of these doctors continued to see plaintiff regularly until November, 1987, for complaints of continuing pains in the back and groin, and despite medication, physical therapy and use of a brace, these symptoms persisted. Dr. Juneau, the orthopedist, concluded that plaintiff was suffering from degenerative disc disease with chronic back pain, but found no evidence of a herniated disc or any nerve root impingement, and saw no need for surgery. Dr. Culicchia also found no need for surgery from a neurological standpoint.
From November 1987, through September, 1988, Dr. Juneau continued to see plaintiff approximately every two months. He noted that plaintiff was still complaining of basically the same pains, and he found no reason to disbelieve these complaints. He therefore continued to prescribe Vicodin and Soma for pain. He also noted that these drugs could cause drowsiness, dizziness and blurred Vision in some patients.
The record further shows that Crawford and Company was administering plaintiffs workman’s compensation claim on behalf of Winn-Dixie, and that Dr. Juneau was regularly reporting to Crawford on plaintiff’s medical condition and ability to work. As early as August 12, 1987, the doctor reported to Crawford that he had reviewed the job analysis for a locksmith’s job, and felt that plaintiff would be able to perform such a job, but he ruled out any type of work which would require frequent stooping, climbing, bending or lifting of heavy objects. These opinions were repeated in a December 28, 1987, letter, and it was on the basis of these reports that Winn-Dixie concluded that plaintiff was no longer temporarily totally disabled. It therefore reduced his compensation benefit to the supplemental earnings benefits level in April of 1988.
Nonetheless, Dr. Juneau continued to treat plaintiff for his persisting complaints, and in May, 1988, he concurred with plaintiff’s suggestion that he get an opinion from another orthopedic surgeon, Dr. Robert Fleming. Dr. Fleming had an MRI test performed, and concluded from this test *62 that plaintiff had a bulging L3-4 disc which was probably impinging on a nerve root and producing the chronic pain. His recommendation was that a lumbar laminecto-my operation should be performed. He further testified that although plaintiff would still have limitations in his back after surgery, the anticipated result would be to relieve the chronic pain. He concurred in Dr. Juneau’s opinion that Vicodin can cause drowsiness, and also stated that people taking this drug should not drive a motor vehicle. He noted that were the surgery to eliminate the pain, then the drugs would be unnecessary and any limitations on plaintiffs ability to work caused by the side-effects of the drugs would likewise be eliminated.
The surgery was originally scheduled for September 7, 1988, and Crawford was informed of this. Before agreeing to pay for this procedure, it consulted Dr. Juneau again, and after reviewing the results of the MRI, this doctor again gave the opinion that the proposed surgery was not necessary. Relying on this opinion, Crawford refused to authorize the surgery.
In addition to monitoring plaintiffs medical condition, Crawford referred him to Richard Smith, an expert rehabilitation consultant, in July, 1987. After analysing his work experience, educational background and the physical limitations noted by Dr. Juneau, Mr. Smith concluded that he would be capable of certain sedentary jobs, and particularly locksmith work. He further admitted, however, that he had not considered the side effects of the pain medication which plaintiff was taking, and further stated that if such effects were dizziness, drowsiness and blurred vision, there would be a possibility that he could not be gainfully employed at any of the jobs mentioned.
Plaintiff testified that in spite of all his treatments, he still suffered pain in the lower back and groin and regularly takes the pain medication which produces the effects discussed above. He noted that often he is unable to put on his pants, shoes, and socks because he can’t bend over, and further testified that the pain is exacerbated upon standing or walking. He said that he was a trained locksmith, but also stated that that work requires frequent bending and stooping, and that he was simply unable to do it. He finally said that he was willing to undergo the recommended surgery.
By way of rebuttal to plaintiff’s testimony, Winn-Dixie introduced two video-tapes of him on two separate days. The first simply shows him walking perhaps 600 feet across a parking lot. The second was a tape of him picking a lock on a van door for someone who had allegedly locked their keys in the vehicle. The owner of the vehicle was in fact an investigator, hired by the defendant, who called plaintiff at his home and claimed to be locked out of his van. Plaintiff, who had done locksmith work part time when still employed by defendant and still had his truck and locksmith tools, went to the parking lot and spent about an hour picking the lock. He admitted to opening cars on a few occasions since his injury simply to help people out, but further stated that he would be unable to do this type of work on any regular basis.
On the above evidence, the trial judge found that plaintiff was credible as to his complaints, and that taking all the medical testimony together, Dr. Fleming’s diagnosis of a bulging disc with probable nerve root impingement was more probably than not the source of his complaints. He therefore ruled that plaintiff was still disabled and thus entitled to full temporary total disability benefits, and that the surgery recommended by Dr. Fleming should be paid for by the defendant. He further ruled, that because of the reports of Drs. Culicchia and Juneau, and Mr. Smith, that the defendant was not arbitrary and capricious in reducing the benefits on March 21, 1988. After reviewing the entire record in this matter, we cannot say that the trial judge was manifestly wrong in these credibility determinations and therefore affirm his judgment as to the matters above, Rosell v. ESCO, 549 So.2d 840 (La.1989).
However, the trial judge also ruled that the restoration of the temporary *63 total disability benefits was to be effective only from the date of judgment. In this court’s opinion, this was legal error. It appears from the oral reasons for judgment that because he found that the defendant did not act arbitrarily in reducing the benefits, that it should not have been required to restore the original benefits until it was judicially determined that plaintiff was still temporarily disabled. While we appreciate his reasoning, that is not the law. Under La.R.S. 23:1201, payments for disability benefits which have been withheld or terminated by an employer because entitlement to these benefits has been reasonably controverted, relieves that employer of penalties for failure to pay. However, it does not absolve them from liability for such payments when the worker shows at trial that he is entitled to the benefits, Wills v. Solida Construction Co., 543 So.2d 1365 (La.App. 2nd Cir.1989).
In the present case, the plaintiff showed that he was still disabled and thus entitled to full temporary total disability benefits from the date of his injury. Although his employer may not have acted arbitrarily in reducing benefits, it is still liable for the total benefits owed to the plaintiff since the date of his accident. We therefore amend the judgment of the trial court to make the award of $254.00 per week retroactive to March 21, 1988, with credit for amounts paid by the employer for supplemental earnings benefits.
For these reasons, the judgment of the trial court is amended in part, and affirmed in part. All costs of this appeal are to be paid by the defendant.
AMENDED IN PART, AND AFFIRMED AS AMENDED.